IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:16-CR-9-LO |
| | ) | |
| OBAYEDUL HOQUE, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Response to Defendant's Motion for Early Termination of
Supervised Release**

The United States, through undersigned counsel, hereby submits its response to the motion

of Obayedul Hoque ("the defendant" or "Hoque") for early termination of supervised release.  The

defendant began serving his two-year term of supervised release on November 16, 2018.  On June

12, 2020, the defendant filed a motion for early termination of supervised release pursuant to 18

U.S.C. § 3583(e)(1) and Fed. R. Crim. P. 32.1(b).  A hearing has been set for June 23, 2020.  The

United States objects to the defendant's motion because of the outstanding restitution owed.

**Background**

On January 27, 2016, an Information was filed charging Hoque with one count of

conspiracy to defraud the United States in violation of 18 USC § 371.  Dkt. #4.  On that same date,

Hoque pleaded guilty to the Information.  Hoque admitted that between 2008 and 2014, he and his

three co-conspirators, who managed his businesses, conspired to defraud the United States for the

purpose of impeding and impairing the IRS in the ascertainment and collection of individual and

corporate income taxes.  Dkt. #8 at ¶9.  The defendant owned and operated a gas station in

Alexandria, Virginia, and multiple Subway restaurant franchises ("Subway franchises") in

Washington, D.C., Arlington, Virginia, and Alexandria.  Dkt. #8 at ¶2.  Hoque's tax fraud scheme

was fairly straightforward.  Hoque and his co-conspirators did not deposit all of the gas station's

or the Subway franchises' gross receipts into the business bank accounts. *Id*. at ¶10. Instead, Hoque and the managers retained a portion of the gross receipts for their personal benefit, dividing the unreported gross receipts amongst themselves. *Id*. at ¶11. Further, Hoque directed his co-conspirators to provide false monthly sales figures to the accounting firm to prepare the gas station's and Subway franchises' income tax returns. As a result, Hoque caused false corporate and partnership tax returns to be filed which underreported the stores income by over $6.5 million. Dkt. #4 at ¶24 and Dkt. #8 at ¶¶14, 19-22. These returns, in part, impacted Hoque's personal tax returns. As a result, Hoque also admitted that he filed false personal income tax returns for 2008 through 2013. Dkt. #8 at ¶23. The resulting tax loss for the business entities, Hoque personally, and for his co-conspirators was $2,022,106. Dkt. #38 at 11-12.

At sentencing, Hoque was found to be the leader of the conspiracy and to have obstructed justice, thus resulting in sentencing enhancements. Dkt. #54 at 31-34. As detailed in the Presentence Report, the obstruction enhancement was due to Hoque 1) directing his co-conspirators to destroy both sales records and records that tracked the splitting of the proceeds and 2) encouraging his co-conspirators to take responsibility for the fraud and to not implicate him. Dkt. #38 at ¶59. On July 8, 2016, the defendant was sentenced to thirty months of imprisonment, two years of supervised release, and ordered to pay restitution of $2,022,106 to the Internal Revenue Service ("IRS").[1] Dkt. #35

On or about November 7, 2016, the Defendant paid $1,109,450 directly to the IRS towards

---

[1] Hoque was held jointly and severally liable for portions of the restitution with his co-defendants. While the defendant owed over $2 million in restitution, his co-conspirators owed significantly less as they only owed restitution for the taxes related to their stores and their own resulting personal tax liabilities. His co-conspirators were Mohammed A. Siddique (1:16-CR-00036-LO), Mohammad M. Rahman (1:16-CR-00037-LO), and Mohammed T. Ali (1:16-CR-00038-LO)

his restitution. Additionally, the IRS directed his 2016 Federal Income Tax Refund of $17,160

towards his restitution. Finally, he has made regular monthly $250 payments while on supervised

release since November 2018.  However, the defendant still owes restitution to the IRS.

The government understands that the defendant has been mostly compliant while on

supervised release. While it did not rise to the level of a supervised release violation, there have

been some communication issues. The government understands that while the defendant was out

of the country, which he was given permission, he did not give the specific requested information

about his whereabouts, including the address, and when pressed to give his exact location he was

non-responsive. Upon his return, he gave the information of his prior whereabouts in Bangladesh.

Furthermore, there may have had a lapse in his employment due to his month long trip oversees.

Upon his return, defendant found new employment.

**Analysis**

A district court may order termination of supervision "at any time after the expiration of

one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of

the defendant released and the interest of justice."  18 U.S.C. § 3583(e).  Pursuant to 18 U.S.C.

§ 3583(e), the Court may consider the enumerated sentencing factors under § 3553(a), but "the

interest of justice" also gives the Court "latitude to consider a broad range of factors in addition to

an individual's behavior in considering whether to terminate the supervised release period."

*United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).  The decision ultimately lies within

the district court's discretion.  *See id.* at 280 (holding that the district court did not abuse its

discretion in denying defendant's motion for early termination of his term of supervised release).

The defendant offers the following justifications for his request to terminate supervision

early: 1) he served his prison sentence without incident and 2) he has complied with the conditions

of his supervised release.  Dkt. #61.  Compliance with his conditions of release, alone, does not justify early termination of supervision.  *Folks v. United States*, 733 F.Supp.2d 649, 652 (M.D.N.C. 2010) ("Model prison conduct and full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination.");  *United States v. Weintraub*, 371 F.Supp.2d 164, 167 (D.Conn. 2005) (stating that simply following the conditions of supervised release, while commendable, is not a basis for early termination);  *United States v. Caruso*, 241 F.Supp.2d 466, 469 (D.N.J. 2003) ("Mere compliance with the terms of probation or supervised release is what is expected of probationers, and without more, is insufficient to justify early termination.");  *United States v. Medina*, 17 F.Supp.2d 234, 247 (N.D.N.Y. 1998) (noting that an unblemished record on supervised release is not enough, alone, to warrant early termination).

The government believes there is a benefit to continued supervised release so that the defendant can continue making payments towards his restitution and his financial position can be continued to be supervised.[2]  *See United States v. Taylor*, 2011 WL 1167212 *3 (E.D.VA. 2011) (noting that "it is in the interest of justice that restitution be paid" when denying early termination of supervised release of otherwise compliant defendants).  Additionally, defendant's recent supervision has mostly involved telephonic check-ins.  The government understands that the defendant is eligible to continue his telephonic check-in through November which should not be

---

[2] If the Court determines early termination is appropriate, the government requests that defendant be directed to contact the Financial Litigation Unit in the US Attorney's Office at usavae.flu@usdoj.gov to ensure continuity in his payments post-supervised release including filling out a financial statement.  Such a request is in line with defendant's plea agreement in which he is required to provide financial information to United States or Probation. *See* Dkt. #7 at ¶8.

terribly onerous for the defendant to complete.  For these reasons, the government objects to the defendant's motion.

## Conclusion

For the above reasons, the government objects to the early termination of the defendant's supervised release term.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:                 /s/
Kimberly Shartar
Uzo Asonye
Assistant United States Attorneys
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2020, I cause a copy of the foregoing motion to be filed

with the Clerk of the Court using the CM/ECF system, which will automatically generate a Notice

of Electronic Filing (NEF) to all counsel of record.


_____/s/_____

Kimberly Shartar
Assistant United States Attorney